IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| W.E.T., a minor, by and through his<br>parents and next friends WENDELL TABB<br>and DUCHESS ALICIA STALLINGS<br>TABB; WENDELL  TABB; and DUCHESS<br>ALICIA STALLINGS  TABB, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:06CV487 |
| JILL MITCHELL, individually and in her<br>official capacity as an employee of<br>Durham Public Schools; ANN DENLINGER,<br>individually and in her official capacity as an<br>employee of Durham Public Schools; and<br>DURHAM PUBLIC SCHOOLS BOARD<br>OF EDUCATION, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION

BEATY, Chief Judge.

This case involves claims under 42 U.S.C. § 1983 and related state law claims arising out

of an incident at a Durham Public School.  The claims are brought by W.E.T., a minor

("W.E.T."), by and through his parents and next friends, Wendell Tabb (" W. Tabb") and

Duchess Tabb ("D. Tabb") and W. Tabb and D. Tabb individually (hereinafter "Plaintiffs").

Plaintiffs' claims are being asserted against Durham Public Schools employee, Jill Mitchell

("Mitchell"), Durham Public Schools Superintendent Ann Denlinger ("Denlinger"), and the

Durham Public Schools Board of Education (the "DPS Board").[1]  Defendant Mitchell has filed a Motion to Dismiss [Document #16] seeking dismissal of certain of the Plaintiffs' claims. Defendants Denlinger and the DPS Board have filed a separate Motion to Dismiss [Document #9] seeking judgment in their favor as to all of the Plaintiffs' claims.  For the reasons discussed below, Mitchell's motion to dismiss is denied in part and granted in **part.  Denlinger and the DPS Board's motion to dismiss is granted as to all claims against Denlinger individually and in her official capacity as Superintendent of the DPS Board.  Finally, Denlinger and the DPS Board's motion to dismiss as to the claims against the DPS Board is denied in part and granted in part.**

I. FACTUAL BACKGROUND

According to the allegations in the Complaint, Plaintiff W.E.T. is a ten year old, special needs student who suffers from asthma, is partially blind and has been diagnosed with cerebral palsy.  Because of his disabilities, W.E.T. attends occupational and physical therapy.  At the time of incident, W.E.T. was a student in Mitchell's "Resources" class, a class designated for students with special needs.  Mitchell is a special needs therapist at Hope Valley Elementary School, a Durham Public School.

On the morning of April 19, 2005, W.E.T. was talking with another student while entering Mitchell's classroom. Mitchell informed the students that there would be "no talking today" in class. (Compl. ¶ 14.)  W.E.T.  began a writing exercise and after several minutes of

---

[1]  Plaintiff voluntarily dismissed claims against Betsy Knott, principal of Hope Valley School, prior to the Court's consideration of the remaining Defendants' motions to dismiss.

silence, he whispered an apology to his classmate for having gotten him in trouble. The Complaint alleges that upon hearing W.E.T.'s apology, Mitchell "sharply rebuked" him and "suddenly and without warning" ripped a piece of masking tape from a roll and "forcefully" placed it over W.E.T.'s mouth. (Compl. ¶ 17.) The Complaint further alleges that because of W.E.T.'s severe asthma, a condition of which Mitchell was aware, he began to have problems breathing when the tape was placed over his mouth. Shortly thereafter, W.E.T. attempted to get Mitchell's attention by attempting to orally communicate through the tape without removing it. As a result, the tape began to fall off and W.E.T. informed Mitchell that the tape was no longer sticking. Mitchell responded that the tape was "not supposed to stick" and "forcefully" ripped it from his mouth. (Compl. ¶ 18.)

Plaintiffs have alleged extensive mental and emotional damages as a result of this incident. The Complaint alleges that W.E.T. has suffered "severe emotional anguish" and is afraid to be left alone with people other than his mother. (Compl. ¶ 23.) Further, it is alleged that he is reluctant to return to physical and occupational therapy and has shown a distrust of therapists. Additionally, the Complaint alleges that the incident has hindered W.E.T.'s ability to maintain his relationship with his friends and family, and that he has since become "withdrawn and reserved." (Compl. ¶ 25.) Further, Plaintiffs allege that because of his emotional anguish, W.E.T. has had to change schools, and that this incident will likely create mental anguish requiring additional future physical, occupational, psychological and, or psychiatric therapy.

The Complaint further alleges that Plaintiffs W. Tabb and D. Tabb have personally

3

suffered "extreme mental anguish in watching the developmental regression of their son" and that "their concern for W.E.T.'s future well-being and his progression to adulthood has been heightened by this incident." (Compl. ¶ 27).

## II. ANALYSIS OF CLAIMS

Based on the allegations in the Complaint, Plaintiffs have brought claims against Mitchell, Denlinger, and the DPS Board. As to Mitchell, Plaintiffs have asserted the following claims: (1) claims under 42 U.S.C. § 1983 in her individual capacity and as an employee of the DPS Board for violations of the Fourth and Fourteenth Amendments to the Constitution; and (2) state law claims of false imprisonment, intentional and negligent infliction of emotional distress, assault, battery and negligence. As to Denlinger, Plaintiffs have asserted the following claims: (1) claims under 42 U.S.C. § 1983 for failure to train and properly supervise school employees in her official and individual capacities; and (2) a state law claim of negligence in her official and individual capacities. Finally, as to the DPS Board, Plaintiffs have asserted the following claims: (1) claims under 42 U.S.C. § 1983 for failure to train and properly supervise school employees; and (2) claims of false imprisonment, intentional and negligent infliction of emotional distress, assault, battery and negligence.

Each of the Defendants have moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Additionally, each of the Defendants have moved to dismiss certain of the Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Mitchell has separately moved to dismiss

4

Plaintiff W.E.T.'s claim under 42 U.S.C. § 1983 for violations of W.E.T.'s Fourteenth and Fourth Amendment rights. In addition, Mitchell has moved to dismiss Plaintiff W.E.T.'s claims of false imprisonment, intentional infliction of emotional distress, and his request for punitive damages. Mitchell has also moved to dismiss Plaintiffs W. Tabb and D. Tabb's individual claims of intentional and negligent infliction of emotional distress, and their request for punitive damages. Finally, Defendants Denlinger and the DPS Board have moved to dismiss all of Plaintiffs' claims.

In analyzing Plaintiffs' claims and Defendants' Motions to Dismiss, the Court will first address the Defendants' grounds for dismissal under Fed. R. Civ. P. 12(b)(1). Next, the Court will address the claims and contentions separately as to each Defendant, and will conclude with a summary of the claims that may remain. Thus, Section A below addresses the issue of this Court's jurisdiction to hear the claims presented; Section B addresses Plaintiffs' claims against Mitchell; and Section C addresses Plaintiffs' claims against Denlinger and the DPS Board.

A.    JURISDICTION

Defendants have moved to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Under 28 U.S.C. § 1331 federal district courts have "original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2004). In cases where federal law creates the cause of action, the Courts of the United States unquestionably have federal subject matter jurisdiction. Mulcahey v. Columbia Organic Chems., Co., 29 F.3d 148, 151 (4th Cir. 1994). In this case,

5

Plaintiffs alleged causes of action under 42 U.S.C. § 1983 in addition to state law tort claims. Because a cause of action under 42 U.S.C. § 1983 was created by federal law, this Court has subject matter jurisdiction to hear the claim. Further, where a court has original jurisdiction over a civil action, 28 U.S.C. § 1332 confers supplemental jurisdiction over "all other claims that are so related . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1332 (2004). Consequently, this Court has supplemental jurisdiction over the Plaintiffs' state law claims. Therefore, Defendants' motions to dismiss insofar as they are based upon Rule 12(b)(1) are denied. The Court now turns to an analysis of the merits to determine if any of Plaintiffs' claims warrant dismissal under Rule 12(b)(6).

B.    CLAIMS AGAINST MITCHELL

All of the Defendants have moved to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A motion to dismiss for failure to state a claim is permissible "only in very limited circumstances." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989). Generally, a court may dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) (internal quotations omitted); accord Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). In making this determination, a court must view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded

6

allegations.  Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994).

      1.  Federal Claims Against Mitchell

Plaintiffs allege that Mitchell's actions violated 42 U.S.C. § 1983 by depriving W.E.T. of his substantive due process rights under the Fourteenth Amendment.  The Fourth Circuit has held that "there may be instances of corporal punishment administered by a state school official that give rise to an independent federal cause of action to vindicate substantive due process rights under 42 U.S.C. § 1983 ."  Hall v. Tawney, 621 F.2d 607, 611 (4th Cir. 1980).  In determining whether Mitchell's actions violated W.E.T.'s constitutional rights, this Court must apply the Fourth Circuit's analysis in Hall v. Tawney, the seminal case addressing excessive force in public schools.  See, Hall, 621 F.2d at 607-15 (holding that the district court erred in dismissing the student's substantive due process claim alleging repeated paddling by a teacher which resulted in the plaintiffs' hospitalization and possible permanent injuries to the spine and back).

The court recognized in Hall that while "not every violation of state tort and criminal assault laws will be a violation of this constitutional right . . . some of course may." Id. at 613. Thus, in determining whether the force applied rises to the level of a constitutional violation, the inquiry must consider: (1) whether the force was "disproportionate to the need presented;" (2) whether the force was "inspired by malice or sadism rather than a merely careless or unwise excess of zeal;" and (3) whether the force inflicted "severe" injury.  Meeker v. Edmundson, 415 F.3d 317, 321 (4th Cir. 2005) quoting Hall, 621 F.2d at 613.  "If consideration of these factors leads to the conclusion that the force imposed 'amounted to a brutal and inhumane abuse of

7

official power literally shocking to the conscience,' then the plaintiff has made out a substantive due process claim." Id. The Court now turns to an analysis of each of the factors of the Hall test.

### a. Force Disproportionate to Need

Defendants do not dispute the sufficiency of the Plaintiffs' allegations with regard to whether the force used was disproportionate to the need presented. Rather, Defendants argue that Plaintiffs have failed to allege the second and third requirements of the Hall test. Therefore, the Court will proceed to an analysis of whether the Plaintiffs have alleged that the force used by Mitchell was "inspired by malice or sadism."

### b. Malice or Sadism

Defendants argue that Plaintiffs failed to allege facts that would support a conclusion that Mitchell's actions were inspired by malice or sadism. The Complaint alleges that Mitchell's conduct was "malicious, willful or wanton." The United States Supreme Court recently reaffirmed that Fed. R. Civ. P. 8(a)'s "simplified notice pleading standard" merely requires a statement that "'gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir. 2005) quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1(2002). Therefore, the Court finds that the Plaintiffs have satisfied the liberal pleading requirements of Rule 8(a).

8

Further, in addition to pleading malice on the face of the Complaint, the Complaint alleges facts from which malice may be inferred. Specifically, the facts in Plaintffs' Complaint allege that in reaction to W.E.T.'s whispering an apology to his classmate, Mitchell "sharply rebuked W.E.T." and reminded him that she did not want any talking in class. (Compl. ¶ 17.) While these allegations alone might not give rise to an inference of malice, it appears to the Court that the Complaint alleged additional circumstances which indicate that Mitchell took further action against W.E.T. Specifically, Plaintiffs further alleged that despite having been W.E.T.'s school therapist for at least five years preceding the incident, and as such she was well aware of his severe asthma condition, developmental disabilities and cerebral palsy, Defendant Mitchell, "then, suddenly and without warning ripped a piece of masking tape from a roll . . . and forcefully placed the masking tape over W.E.T.'s mouth." (Compl. ¶ 17.) Plaintiffs contend that these additional facts sufficiently allege and support their allegation of conduct that amounts to malicious action by Mitchell against W.E.T.

Defendants respond, however, that the Complaint itself belies the Plaintiffs' arguments, by alleging that when W.E.T. later informed Mitchell that the tape was no longer sticking, Mitchell responded that the tape was "not supposed to stick." (Defs.' Mem. Supp. Mot. Dismiss 7.) [Document #10 at 8] However, the Complaint further alleges that in response, Mitchell proceeded to "forcefully" rip the tape from W.E.T.'s mouth. (Compl. ¶ 18.) Defendants argue that Mitchell's actions in this regard were motivated by a desire to maintain order in her classroom, rather than by animosity toward the Plaintiff W.E.T. or a desire to hurt him. This

9

argument, however, merely raises a question of fact as to Mitchell's motivation.  Ultimately, the Plaintiffs will bear the burden of proving that Mitchell's conduct was malicious, rather than a "merely careless or unwise excess of zeal." Hall, 621 F.2d at 613.  However, engaging in the weighing of the facts alleged or inquiring into the existence of evidence of malice is premature at this stage of the litigation, and is more appropriate for consideration upon the filing of a motion for summary judgment.  The Court's focus here is limited to whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." Id. at 614.  Considering these facts in the light most favorable to the Plaintiffs, the Court cannot say that it is clearly so in this case.  Therefore, the Court concludes that in addition to pleading malice on the face of the Complaint, Plaintiffs have alleged additional facts which could give rise to an inference that Mitchell's actions were inspired by malice.  Thus, Plaintiffs have met the pleading requirement with regard to the second prong of the Hall analysis.  The Court now turns to the third and final requirement, that is, whether the Complaint alleges that the force inflicted "severe" injury.

c.  Severe Injury

Defendants argue that Plaintiffs have not alleged that W.E.T. suffered  any physical injury, "let alone a 'severe' one." (Defs.' Mem. Supp. Mot. Dismiss at 6.) [Document #10 at 7] Plaintiffs' Complaint alleged that because of his "severe asthmatic condition," W.E.T. suffered "problems breathing" when Mitchell placed the masking tape over his mouth.  (Compl. ¶ 18.) However, the Complaint also suggests that any physical injury was short-lived and fairly minimal

10

since W.E.T. was able to tell Mitchell that "the tape was not sticking." (Compl. ¶ 18.) However, even if the Court could find that Plaintiffs' allegations of breathing problems do not adequately describe a physical injury, <u>Hall</u> does not require that Plaintiff W.E.T.'s injuries be physical in nature, rather, <u>Hall</u> requires that the injury sustained be "severe." <u>Hall</u>, 621 F.2d at 613. Defendants argue that <u>Hall</u> and its progeny, "leave no doubt that severe 'physical' injury is an essential element of a substantive due process claim in the school disciplinary context," and cite <u>Brown v. Ramsey</u>, 121 F. Supp. 2d 911 (E.D. Va. 2000), in support of their contentions. (Defs.' Mem. Supp. Mot. Dismiss at 4.) [Document #10 at 5] In <u>Brown</u>, the defendants' motion for summary judgment was granted after a finding by the court there that the plaintiff had failed to establish that his teacher's disciplinary conduct gave rise to a substantive due process claim. <u>Id.</u> at 923-24. In reaching its conclusion, the court engaged in an extensive analysis of cases where summary judgment had been either granted or denied on the basis of "severe physical injuries" or the lack thereof. <u>Id.</u> at 917-21. However, <u>Brown</u> and the cases discussed therein can be distinguished from the case at bar. <u>Brown</u> involves a determination of the evidence at the summary judgment stage, which applies a different rule and standard than does this Court when considering a motion to dismiss. Therefore, <u>Brown</u> does not persuade the Court that Plaintiffs have failed to allege a "severe" injury.

More persuasive, is the Fourth Circuit's decision in <u>Meeker v. Edmundson</u>, 415 F.3d 317 (4th Cir. 2005). In <u>Meeker</u>, the court considered physical as well as emotional injuries. <u>Id.</u> The court held that a student's allegations of "excruciating physical pain, inflammation of the body

11

and 'traumatic stress disorders' which 'may be permanent in nature'" were adequate to support a substantive due process claim. 415 F.3d at 321 (relying on the Ninth Circuit's decision in P.B. v. Koch, 96 F.3d 1298, 1302 (9th Cir. 1996) (holding that in addition to other factors, "pain, bruising, and emotional injury" provide a basis for a substantive due process violation); see also, Dockery v. Barnett, 167 F. Supp. 2d 597, 604 (S.D.N.Y. 2001) (finding that the plaintiffs, two autistic students, had shown a severe injury where "along with scratches and bruises, [plaintiffs] have faced severe psychological injuries" evidenced by changes in behavior).

In this case, the Complaint alleges that W.E.T. has suffered "severe emotional anguish" to such an extent that he is afraid to be alone with people other than his mother, is reluctant to return to physical and occupational therapy, and has developed a mistrust of therapists. Plaintiffs contend that W.E.T.'s emotional anguish has been so extreme that he had to change schools before the school year's end, and it has begun to interfere with his ability to maintain his relationships with his friends and family. (Compl. ¶¶ 24-25.) Plaintiffs further allege that this incident is "likely . . . [to] create mental anguish that will require much additional future physical, occupational, psychological, and/or psychiatric therapy." (Compl. ¶ 26.) Because Plaintiffs have provided allegations of the extent of W.E.T.'s mental and emotional injuries, the Court concludes that the Plaintiffs have sufficiently alleged severe injuries. Therefore, the Court concludes that Plaintiffs have satisfied the third and final pleading requirement of the Hall analysis.

In the alternative, Defendants argue that Mitchell's actions are "well within the bounds

12

of her statutory and common law privilege" to discipline students in public school and thus, her actions cannot constitute a violation of substantive due process rights as a matter of law. (Defs.' Mem. Supp. Mot. Dismiss at 10.) [Document #10 at 11] To the extent that Defendants provided authority to support their contentions of a common law privilege, Defendants cited <u>Cole v. Greenfield- Central Community Schools.</u>, 657 F. Supp. 56 (S.D. Ind. 1986).[2] <u>Cole</u> involved a § 1983 case against a teacher that was brought after a piece of tape was placed over a student's mouth. <u>Id.</u> There the court found that the taping was a "symbolic, demonstrative, disciplinary technique[ ] (rather than a punitive, physically painful technique) designed to remind the plaintiff to remain silent" and that such actions, "did not exceed the bounds of [the teacher's] common law privilege to discipline her pupils." <u>Id.</u> at 62. <u>Cole</u>, however, is inapposite to the case at hand. <u>Cole</u> was decided after the defendants' motion for summary judgment had been denied, and a full trial was held to consider the evidence. Further, the trial court found that the student had placed the tape over his own mouth and, at the teacher's instruction, the student removed it. <u>Id.</u> The force used in this case, was Mitchell's, not that of Plaintiff W.E.T. Therefore, <u>Cole</u>, although factually similar, is inapplicable to case at bar when considering the Defendants' motions to dismiss, particularly since the Court is not considering the weight of any evidence

_____

[2] The Court notes, however, that Defendants failed to cite any North Carolina common law authority to support their contentions. In fact, since the date of this incident, there is no statutory privilege that exists under North Carolina law for the type of conduct at issue in this case. <u>See</u> N.C. Gen. Stat. § 115C-391.1(d)(2) (2005) ("mechanical restraint, including the tying, *taping*, or strapping down of a student, shall not be considered a reasonable use of force, and its use is prohibited.")(emphasis added).

13

at this stage of the litigation.

Even assuming for the sake of argument that Mitchell's conduct was privileged under North Carolina law, the Court finds no merit in the Defendants' contentions that actions which are privileged under the common law cannot constitute a violation of substantive due process rights. Defendants, in support of their argument, rely on the United States Supreme Court's decision in Ingraham v. Wright, 430 U.S. 651, 676, 97 S. Ct. 1401, 1415, 51 L. Ed. 2d 711 (1977) (holding that the cruel and unusual punishment clause of the Eighth Amendment does not apply to disciplinary corporal punishment in public schools; and that the due process clause does not require notice and hearing prior to the action, because paddling was authorized under state common-law). Defendants argue that Ingraham stands for the proposition that, "there can be no deprivation of substantive rights as long as disciplinary corporal punishment is within the limits of the common-law privilege." Id. The Fourth Circuit discussed Ingraham at length in its decision in Hall v. Tawney and stated that even in light of the Supreme Court's decision in Ingraham, "substantive due process rights might be implicated in school disciplinary punishments even though procedural due process is afforded by adequate state civil and criminal remedies, and though cruel and unusual punishment is not implicated at all. That question, unresolved and reserved in Ingraham is squarely presented for decision on this appeal." Hall, 621 F.2d at 611. Ingraham, decided on wholly unrelated constitutional grounds, does not provide the court with guidance on the issues present in the motions pending before the Court. The Fourth Circuit's decision in Hall, however, makes it clear that conduct which gives rise to a violation of

14

substantive due process rights cannot be excused by any common law privilege permitting corporal punishment. As Plaintiffs aptly state in their Memorandum in Opposition to Defendants' Motion to Dismiss, "conduct that fails [the Hall] constitutional test cannot be rehabilitated by reference to the common law." [Document #22 at 9].

The Court finds, therefore, that Mitchell's conduct is not privileged under the common law. Further, even if Mitchell's conduct were privileged under some statutory provision or common law authority, the Fourth Circuit has made it clear that such a privilege must undergo a Hall analysis to determine whether the conduct in question gives rise to violations of substantive due process rights. Because the Plaintiffs have alleged each of the elements of the Hall analysis, the Court finds that Plaintiff W.E.T. has stated a claim under § 1983 for which relief can be granted. Therefore, Defendant Mitchell's motion to dismiss the § 1983 claim is denied.[3]

### 2. State Law Claims Against Mitchell

#### a. False Imprisonment

As to Plaintiff W.E.T.'s state law tort claims alleged against Mitchell in the Complaint, the Court finds that Plaintiff W.E.T. has stated a claim for false imprisonment. Under North Carolina law, the elements of a claim for false imprisonment are: (1) illegal restraint of the plaintiff by the defendant; (2) by force or threat of force; and (3) against the plaintiff's will.

---

[3] Because the Court has found that Plaintiff W.E.T. has stated a claim under § 1983 for violations of his rights under the Fourteenth Amendment, the Court declines to decide Defendants' alternative grounds for dismissal which raises the question of whether W.E.T. has stated a claim under § 1983 on Fourth Amendment grounds.

Rousselo v. Starling, 128 N.C. App. 439, 449, 495 S.E.2d 725, 732 (1998). The Court is mindful that by virtue of compulsory school attendance laws, children give up a certain degree of freedom upon entering the classroom. Therefore, school officials have statutory authority to use "reasonable force in the exercise of lawful authority to restrain or correct pupils and maintain order." N.C. Gen. Stat. § 115C-390 (2005). However, school officials do not possess absolute authority over their students. Givens v. Poe, 346 F. Supp. 202 (M.D.N.C. 1975). Mitchell, nevertheless, argues that Plaintiffs failed to allege that she "restrained" W.E.T. The Supreme Court of North Carolina has said that "restraint" of the person "may be caused by threats, as well as by actual force, and the threats may be by conduct or by words." Hales v. McCrory-McLellan Corp., 260 N.C. 568, 570, 133 S.E.2d 225, 227 (1963). "It is not necessary that the individual be actually confined or assaulted, or even that he should be touched. Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty . . . is an imprisonment." Id. The Complaint alleges that Mitchell unlawfully and without his consent, forcibly taped W.E.T.'s mouth shut; and that he remained in that condition for several minutes. Taking the Plaintiffs' factual allegations as true as it must at this stage of the litigation, the Court finds that Plaintiff W.E.T. has sufficiently stated a false imprisonment claim under state law, and the Court therefore denies Mitchell's motion to dismiss this claim.

16

b.  Intentional Infliction of Emotional Distress

As to Plaintiff W.E.T.'s claim against Mitchell for intentional infliction of emotional distress, the Court finds that **W.E.T. has stated a claim for which relief may be granted.**  To state a claim for intentional infliction of emotional distress, plaintiffs must allege: (1) extreme and outrageous conduct by the defendant; (2) which is intended to and does in fact cause (3) severe emotional distress.  <u>Harris by Tucker v. County of Forsyth</u>, 921 F. Supp. 325, 335-36 (M.D.N.C. 1996); <u>Waddle v. Sparks</u>, 331 N.C. 73, 414 S.E.2d 22 (1992).  A claim may also exist where the defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress.  <u>Hogan v. Forsyth Country Club Co.</u>, 79 N.C. App. 483, 487-88, 340 S.E.2d 116, 119-20 (1986); <u>S. Furniture Hardware Inc. v. Branch Banking & Trust Co.</u>, 136 N.C. App. 695, 702, 526 S.E.2d 197, 201 (2000).  "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may be reasonably found to be sufficiently outrageous as to permit recovery."  <u>Beck  v. City of Durham</u>, 154 N.C. App. 221, 231, 573 S.E.2d 183, 191 (2002) (internal quotations omitted).  Taking the facts alleged in the Complaint as true, Plaintiffs have pleaded facts that give rise to an inference that Mitchell engaged in outrageous conduct that was intended to cause and did cause W.E.T. severe emotional distress.  Plaintiff W.E.T. has also alleged that Mitchell acted with reckless indifference to the likelihood that placing tape over the mouth of a child whom she knew to have significant disabilities would cause him severe emotional distress.  Therefore, the Court finds that Plaintiff W.E.T. has stated a claim for which relief can be granted and denies Mitchell's motion to dismiss

17

this claim.

As to Plaintiffs W. Tabb and D. Tabb's claims against Mitchell for intentional infliction of emotional distress, the Court finds that these Plaintiffs have failed to state a claim for which relief can be granted. While Plaintiffs allege that "Mitchell knew or should have known that her conduct . . . would cause the Plaintiffs severe emotional distress," (Compl. ¶ 68) these allegations do not give rise to an inference that Mitchell acted with the requisite intent to cause W. Tabb and D. Tabb severe emotional distress. Accordingly, the Court grants Mitchell's motion to dismiss Plaintiffs W. Tabb and D. Tabb's claims for intentional infliction of emotional distress.

### c. Negligent Infliction of Emotional Distress

Mitchell has also moved to dismiss Plaintiffs W. Tabb and D. Tabb's claims for negligent infliction of emotional distress. The Court finds that these Plaintiffs have failed to state a claim for which relief can be granted. When a third party seeks to recover for his or her emotional distress arising from injury to another, there must be a further showing that the emotional distress was a foreseeable result of a defendant's negligence. Sorrells v. M.Y.B. Hospitality Ventures, 334 N.C. 669, 672, 435 S.E.2d 320, 321-22 (1993). In making this determination the court considers: (1) the plaintiff's proximity to the negligent act; (2) the relationship between the plaintiff and the injured person; and (3) whether the plaintiff personally observed the negligent act. Id; Harris, 921 F. Supp. at 334. Plaintiffs here allege that the foreseeability of their emotional distress was established by virtue of their parental relationship to W.E.T. However, the parental relationship in and of itself is not sufficient to establish foreseeability. Hickman ex rel. v.

18

McKoin, 337 N.C. 460, 464, 446 S.E.2d 80, 83 (1994) ("[W]hen a parent sues for NIED [negligent infliction of emotional distress] because of injury to a child caused by the negligence of a third party, the parent-child relationship, standing alone, is insufficient to establish that the severe emotional distress was reasonably foreseeable.") Further, Plaintiffs W. Tabb and D. Tabb have failed to allege that they were in the vicinity of incident when it occurred, or that they personally observed Mitchell's actions. As such, the Court finds that W. Tabb and D. Tabb have failed to allege facts that would support their claims of negligent infliction of emotional distress against Mitchell. Accordingly, Mitchell's motion to dismiss these claims is granted.

d. Punitive Damages

Finally, Mitchell has moved to dismiss Plaintiffs' claims for punitive damages. Because Plaintiffs W. Tabb and D. Tabb have failed to state any claims against Mitchell, the Court also grants Mitchell's motion to dismiss W. Tabb and D. Tabb's claims for punitive damages. As to W.E.T.'s request for punitive damages against Mitchell, the Court finds that W.E.T. has stated a claim for which relief can be granted. Under North Carolina law, punitive damages may be awarded when compensatory damages are awarded and one or more of the following factors is present: (1) fraud; (2) malice; or (3) wanton and willful conduct. N.C. Gen. Stat. §1D - 15(a)(2006). The Court finds that the Complaint alleges facts sufficient to support an award of punitive damages against Mitchell. The Complaint alleges that Mitchell's conduct was "malicious, willful or wanton," and alleges facts sufficient to support an inference of malicious, willful or wanton conduct. (Compl. ¶ 28-30.) Plaintiffs allege that Mitchell was aware of

19

W.E.T.'s disabilities and intentionally and forcefully placed masking tape on his mouth.  Further the Complaint alleges that because of her long-standing familiarity with W.E.T.'s severe asthma and developmental disabilities, Mitchell was aware that her actions would result in harm to W.E.T.  Taking all allegations in the light most favorable to the Plaintiff, the Court finds that W.E.T. has alleged facts that could give rise to an inference that Mitchell's actions were a "conscious and intentional disregard of an indifference to the rights and safety of [the plaintiff], which the defendant knows or should know is reasonably likely to result to result in injury, damage, or other harm." Id. at § 1d-5(7).  Therefore, Mitchell's motion to dismiss W.E.T.'s claim of punitive damages is denied.

Having denied Mitchell's motion to dismiss W.E.T.'s federal and state claims, and having granted Mitchell's motion to dismiss D. Tabb's and W. Tabb's state claims, the Court now turns to consideration of the Plaintiffs' claims against Denlinger and the DPS Board

C.      CLAIMS AGAINST THE DPS BOARD & DENLINGER

      1.  Federal Claims Against the DPS Board & Denlinger

            a.  Federal Claims Against the DPS Board & Denlinger in her Official Capacity

Plaintiffs have brought causes of action against the DPS Board, and against Denlinger in her official capacity under § 1983 for failure to train and properly supervise school employees. Denlinger and the DPS Board have moved to dismiss all of the Plaintiffs' claims against them.  For the reasons stated below, the Court finds that the factual allegations in the Complaint do not

20

support a § 1983 claim against Denlinger in her official capacity, or the DPS Board under either a failure to train or supervisory liability theory.

First of all, a claim against Denlinger in her official capacity is, "in all respects other than name, to be treated as a suit against the [municipality]." Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985). Claims against the official in his or her official capacity which are duplicative of claims against a government entity are subject to dismissal. Id; Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (affirming dismissal of a claim against a defendant in his official capacity where the government entity had also been sued); Shaeffer v. County of Chatham, 337 F. Supp. 2d 709, 721 (M.D.N.C. 2004) (dismissing claims against a defendant in her official capacity as duplicative of the plaintiff's claims against the municipality). The Court finds that Plaintiffs' claims against Denlinger in her official capacity are duplicative of the claims against the DPS Board. Because the government entity in this case has also been sued, Plaintiffs' claims against Denlinger in her official capacity are dismissed, and the Court now turns to whether the Plaintiffs have stated a claim against the DPS Board for violations of § 1983.

To hold a municipality liable for a constitutional violation under § 1983, a plaintiff must show that it was an official policy or custom of the municipality that caused the violation.[4] Love-Lane, 355 F.3d at 782 (internal citations omitted). The "official policy" requirement is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby

_____

[4] A public school board is considered a municipality in North Carolina. Barbier v. Durham Count Bd. of Educ., 225 F. Supp. 2d 617, 630 (M.D.N.C. 2002) (citing Sides v. Cabarrus Mem'l Hosp., 22 N.C. App. 117, 118-20, 205 S.E.2d 784, 786-87 (1974).

make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986) (emphasis in original). Plaintiffs, however, have not alleged that it was the official policy or custom of the DPS Board to engage in the conduct attributed to Mitchell in violation of W.E.T.'s constitutional rights. Rather, Plaintiffs have alleged that the DPS Board's failure to adequately train Mitchell resulted in the alleged violations of W.E.T.'s constitutional rights. Failure to train can, in some limited circumstances, constitute a policy or custom actionable under § 1983. See, e.g., Jordan v. Jackson, 15 F.3d 333, 341 (4th Cir. 1994); see also, Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999). In other words, a municipal custom may be inferred where Plaintiffs have made a showing of deficient training.

However, a § 1983 claim based on a theory of inadequate training as alleged in this case is actionable only "where the municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference'" to a citizen's constitutional rights. Jordan, 15 F.3d. at 341 citing City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989). "Only if in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in a violation of constitutional rights, can a municipality reasonably be said to have been deliberately indifferent to that need." Id. (internal quotations omitted). Therefore, "a plaintiff must point to a specific deficiency and not a general ineffectiveness of the training." Semple, 195 F.3d at 713. Further, "a plaintiff must show a direct causal connection between a specific deficiency in training and the

specific injury alleged." Id. (internal citations omitted). Finally, "[n]either a policy or custom of deficient training, nor the required causal connection can be shown by proof of a single incident of unconstitutional activity alone." Jordan, 15 F.3d at 341.

Plaintiffs have alleged that the DPS Board failed to properly train and supervise Mitchell. However, Plaintiffs have failed to show how the DPS Board's alleged failure amounts to a showing of "deliberate indifference." Merely alleging that the DPS Board's actions amounted to deliberate indifference "does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of deliberate indifference." Young, 238 F.3d 567, 576-77 (4th Cir. 2001). The Complaint alleges that the DPS Board "through [its] acts or omissions condoned Mitchell's malicious, willful or wanton conduct." (Compl. ¶ 75.) However, there are no inferences which can be drawn from the Plaintiffs' bare assertions that suggest a showing of deliberate indifference. "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). "A claim of deliberate indifference . . . implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice." Young, 238 F.3d at 576 quoting White v. Chambliss, 112 F.3d 731, 737 (4th Cir. 1997). Plaintiffs, however, have failed to allege that the DPS Board was ever notified of Mitchell's actions or that the DPS Board was aware of any risk of harm to W.E.T. Without alleging such facts, even accepting all of Plaintiffs' allegations as true, the Court cannot determine how Plaintiffs' Complaint can adequately state a claim that the DPS Board acted with "deliberate indifference." Furthermore,

23

Plaintiffs have not alleged any specific instances of deficient training on behalf of the DPS Board. At most, Plaintiffs have alleged a general ineffectiveness in training. Thus, Plaintiffs' claim fails in this respect. Moreover, Plaintiffs' Complaint in this case alleges only one instance of unconstitutional activity. Because Plaintiffs can not establish a policy or custom of the DPS Board, nor can they establish a causal connection between an alleged failure to train and the alleged injury to W.E.T. through their allegations of a single instance of unconstitutional activity, Plaintiffs' claim also fails in this regard. Accordingly, Plaintiffs have failed to state a § 1983 claim against the DPS Board on their theory that the DPS Board failed to adequately train Mitchell.

With regard to Plaintiffs' claims that the DPS Board failed to properly supervise Mitchell, the Court finds that the Plaintiffs have failed to allege facts that would give rise to a violation of § 1983. It is well settled that "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). However, to establish supervisory liability under § 1983, the plaintiff must first establish the initial element of his claim, that is, that the supervisor had actual knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff. Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001). Plaintiffs in this case have not alleged in any manner that Denlinger or the DPS Board had actual or constructive knowledge of Mitchell's actions. Thus, having failed to allege the first element of a claim for failure to properly supervise Mitchell, Plaintiffs have failed to state a claim for supervisory liability under § 1983. Consequently, the Court finds no basis to otherwise address

24

whether the DPS Board or Denlinger have any personal liability to Plaintiffs under § 1983.

Accordingly, Denlinger and the DPS Board's motion to dismiss W.E.T.'s § 1983 claim is granted.

### b. Federal Claims Against Denlinger in her Individual Capacity

To the extent that Plaintiffs' claim against Denlinger in her individual capacity for failure to train Mitchell rests upon the same grounds as their claim against the DPS Board, the Court finds that Plaintiffs have alleged no facts that would support a claim of "deliberate indifference" against Denlinger. Plaintiffs have failed to allege that Denlinger had any personal knowledge of Mitchell's actions or that Denlinger was aware of any risk of harm to W.E.T. Accordingly, Plaintiffs § 1983 claim against Denlinger in her personal capacity for failure to train is dismissed.

Further, to the extent that the Plaintiffs' claim against Denlinger in her individual capacity for failure to supervise Mitchell rests upon the same grounds as their claim against the DPS Board, the Court finds that Plaintiffs have failed to allege that Denlinger had actual or constructive knowledge of Mitchell's actions. Nor have Plaintiffs alleged that Denlinger had any supervisory responsibilities with regard to Mitchell. Accordingly, Plaintiffs' § 1983 claim against Denlinger in her individual capacity for failure to supervise is dismissed.[5]

---

[5] Because the Court finds that Plaintiffs have failed to state a § 1983 claim against Denlinger in her individual capacity for failure to train or supervise Mitchell, the Court declines to address the Defendants' alternate grounds for dismissal which raised the question of whether Denlinger is entitled to qualified immunity under federal law.

2. State Law Claims Against the DPS Board and Denlinger

    a. State Law Claims Against the DPS Board & Denlinger in her Official Capacity

        i. Application of Sovereign Immunity Doctrine

Plaintiffs have also brought claims against the DPS Board for assault, battery, false imprisonment, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress, seeking to hold it vicariously liable for Mitchell's actions. Additionally, Plaintiffs have brought a cause of action for negligence against Denlinger in her official capacity as Superintendent of the DPS Board. Defendants have moved to dismiss each of these claims on the basis of sovereign immunity. As a general rule, a school board may not be held liable for the tort of its officers or employees acting in the scope of employment unless it has waived its governmental immunity. Hallman v. Charlotte-Mecklenburg Bd. of Educ., 124 N.C. App. 435, 437, 477 S.E.2d 179, 180 (1996). Further, "the doctrine of governmental immunity also bars actions against 'public officials sued in their official capacity.'" Beck v. City of Durham, 154 N.C. App. 221, 229-30, 573 S.E.2d 183, 189 (2002). Thus, Denlinger could also be immune from suit for tortious acts allegedly committed by her in her official capacity. However, a school board waives its governmental immunity through the purchase of liability insurance, Lail v. Cleveland County Bd. of Educ., 645 S.E.2d 180, 185 (N.C. Ct. App. 2007) to the extent that the school board and its officers and employees are indemnified by the insurance contract from liability for the acts alleged. See also N.C. Gen. Stat. 115C-42.

26

To sustain tort causes of action against a municipality as are being asserted here, the Plaintiffs must allege in the Complaint a waiver of immunity by the purchase of liability insurance. Mullins v. Friend, 116 N.C. App. 676, 681, 449 S.E.2d 227, 229 (1994) ("If the plaintiff does not allege a waiver of immunity by the purchase of insurance, the plaintiff has failed to state a claim against the governmental unit or the officer or employee."). Plaintiffs have alleged in the Complaint that the DPS Board holds liability insurance covering it and its officers and employees, and has consequently waived any governmental immunity. Therefore, the Court denies Defendants' motion to dismiss Plaintiffs' state law claims against the DPS Board and Denlinger in her official capacity insofar as Defendants' motion to dismiss is based on a defense of sovereign immunity.

### ii. Respondeat Superior

Plaintiffs have also alleged that the DPS Board is jointly and severally liable for the torts charged against Mitchell in the Complaint. Defendants have moved to dismiss all of Plaintiffs' state law claims as previously discussed for failure to state claims upon which relief can be granted. With respect to Plaintiffs' claims against the DPS Board for the actions of Mitchell, an employer can be held liable under a theory of respondeat superior for the torts of its employees where: (1) the employer expressly authorized the employee's act; (2) the employee's act is committed in the scope of his employment and in furtherance of the employer's business; or (3) the employer ratifies the employees act. Medlin v. Bass, 96 N.C. App. 410, 416, 386 S.E.2d 80, 83 (1989) (citing Hogan, 79 N.C. App. at 491, 340 S.E.2d at 121-22). The Complaint further alleges that Mitchell

27

is an employee of the DPS Board. In this case, Plaintiffs have also alleged facts which support an allegation that Mitchell acted within the scope of her employment. The Complaint alleges that Mitchell's actions were committed while employed by the DPS Board as a Special Needs Therapist at Hope Valley School. Further, it alleges that Mitchell's actions were committed on school premises, during school hours, while doing what she was employed by the DPS Board to do, that is, to assist special needs students in the "Resources" class with their development.[6] Therefore, the Court finds that Plaintiffs' have alleged a basis for the DPS Board's vicarious liability for the torts with which Mitchell is charged. Thus, the Court now turns to the merits of the Plaintiffs' state law claims against the DPS Board to determine whether any of Plaintiffs' claims would warrant dismissal under Rule 12(b)(6).

Because the Court has found that Plaintiffs W. Tabb and D. Tabb have failed to state individual claims against Mitchell for intentional and negligent infliction of emotional distress, there is no basis to support a claim of vicarious liability as to these two particular claims against the DPS Board. See Sabrowski v. Albani-Bayeux, Inc., No. 1:02cv00728, 2003 WL 23018827 (M.D.N.C. Dec. 19, 2003) (holding that an employer could not be liable on the plaintiff's claims

---

[6] Whether Mitchell's conduct as alleged was negligent or malicious is not relevant to determining the basis for the DPS Board's vicarious liability. The relevant inquiry is whether the employee was acting in the scope of her employment at the time of the alleged wrongdoing. Thus, the DPS Board could be liable for Mitchell's actions in either situation. See Overton v. Henderson, 28 N.C. App. 699, 701, 222 S.E.2d 724, 726 (1976) ("[i]f the servant was engaged in performing the duties of his employment at the time he did the wrongful act which caused the injury, the employer is not absolved from liability by reason of the fact that the employee was also motivated by malice or ill will toward the person injured . . .").

28

for intentional and negligent infliction of emotional distress based on a theory of respondeat superior where the plaintiff failed to state a claim against the employee); see also, Guthrie v. Convoy, 152 N.C. App. 15, 24, 26, 567 S.E.2d 403, 410-11 (2002) (holding that an employer could not be vicariously liable for the plaintiffs claims of intentional and negligent infliction of emotional distress where the plaintiff failed to prove the claims against the employee). Therefore, the Court will grant Defendants' motion to dismiss W. Tabb and D. Tabb's individual claims against the DPS Board.

However, in its discussion regarding the state law claims against Mitchell, the Court determined that Plaintiff W.E.T. indeed has stated actionable claims against Mitchell for false imprisonment and intentional infliction of emotional distress. To the extent that the Court has determined that the DPS Board may be held vicariously liable for these state law claims, Defendants' motion to dismiss Plaintiff W.E.T.'s claims for false imprisonment, and intentional infliction of emotional distress against the DPS Board is denied. Thus, the Court will now address the Plaintiffs' remaining state law tort claims against the DPS Board, that is, Plaintiff W.E.T.'s claims of assault, battery and negligence.

### iii. Assault and Battery

Defendants contend that Plaintiff W.E.T.'s claims for assault and battery should be dismissed because Mitchell's conduct was within the bounds of her statutory and common law privilege to discipline students in her classroom. As previously stated, Defendants have not cited, nor is the Court aware of any common law privilege in North Carolina covering Mitchell's

29

conduct as alleged in the Complaint. Furthermore, any statutory privilege covering Mitchell's conduct was, at the time of the incident, limited to "reasonable force to lawfully restrain or correct students and maintain order" under N.C. Gen. Stat. § 115C-390. However, what is "reasonable" is fact-specific inquiry that is more appropriately addressed at either the summary judgment stage or at trial. However, with respect to a 12(b)(6) analysis, under North Carolina law, "a battery is made out when the person of the plaintiff is offensively touched against his will; the tort of assault, though not requiring a touching, requires that plaintiff be in reasonable apprehension or fear of a battery as a result of the show of violence." <u>Ormond v. Crampton</u>, 16 N.C. App. 88, 94, 191 S.E.2d 405, 410 (1972). The Complaint in this instance alleges that Mitchell intentionally and forcefully placed tape over W.E.T.'s mouth and shortly thereafter ripped it from his mouth. Plaintiffs further allege that Mitchell did so without W.E.T.'s consent. Therefore, the Court finds that the Plaintiffs have stated a cause of action for battery against Mitchell. As to the sufficiency of an allegation of assault or the proper allegations of the elements of an assault claim, "[i]f a battery has been committed . . . plaintiff's fear of imminent harm is no longer an issue." <u>Id.</u> Thus, the Court also finds that Plaintiffs' have satisfactorily alleged cause of action for assault against Mitchell. Accordingly, Plaintiffs have sufficiently alleged a basis upon which the DPS Board could be vicariously liable for allegations of assault and battery engaged in by Mitchell. Therefore, the Defendants' motion to dismiss Plaintiffs' claims of assault and battery is denied. The Court now turns to the final remaining state law claim being asserted by Plaintiffs, which is one for negligence.

30

### iv. Negligence

As previously mentioned, Plaintiffs have alleged causes of action of negligence against the DPS Board and Denlinger in her official capacity as Superintendent of Durham Public Schools. Plaintiffs have alleged that the DPS Board and Denlinger in her official capacity are vicariously liable for negligence attributable to Mitchell. In order to determine the basis for Plaintiff W.E.T.'s vicarious liability allegations against the DPS Board and Denlinger, the Court must first examine whether Plaintiffs' have stated an underlying claim for negligence against Mitchell. To state a claim for common law negligence, a plaintiff must allege that the defendant owed the plaintiff a duty of care; the defendant breached that duty; and the plaintiff suffered damages as a direct and proximate cause of the defendant's negligence. Stein v. Asheville City Bd. of Educ., 360 N.C. 321, 328, 626 S.E.2d 263, 267-68 (2006) citing Keintz v. Carlton, 245 N.C. 236, 240, 96 S.E.2d 14, 17 (1957). Plaintiffs here alleged that Mitchell owed a duty to W.E.T. to act reasonably to avoid conduct that would injure him. Further, Plaintiffs have alleged that Mitchell breached her duty of care by acting carelessly, recklessly, and negligently on the date of the incident. Finally, Plaintiffs have alleged that Mitchell's conduct was the direct and proximate cause of the harm to Plaintiffs. The Court notes with respect to Plaintiffs' Complaint that none of the Defendants dispute the substance of the Plaintiffs' allegations of negligence against Mitchell. Considering these facts in light of the liberal pleading requirements of Rule 8(a), the Court finds that Plaintiffs have stated a cause of action for negligence against Mitchell. Accordingly, the Court concludes that Plaintiffs have satisfactorily alleged a basis for vicarious liability against the DPS Board itself

31

based upon the alleged negligence of Mitchell. Thus, Defendants' motion to dismiss the negligence claim against the DPS Board on a theory of respondeat superior is denied.

However, with regard to the Plaintiffs' claim that Denlinger in her official capacity is vicariously liable for Mitchell's negligence, the Court finds no basis in the Complaint to sustain this cause of action. Plaintiffs do not allege in the Complaint that Mitchell was employed by Denlinger. Instead, Plaintiffs have alleged that Mitchell was an employee of the DPS Board. Consequently, there is no basis to hold Denlinger vicariously liable for Mitchell's alleged negligence. Thus, Plaintiff W.E.T.'s negligence claim against Denlinger in her official capacity, insofar as it is based upon a theory of respondeat superior, will be dismissed.

Plaintiffs further allege that in addition to the DPS Board's vicarious liability for Mitchell's alleged negligence, the DPS Board and Denlinger are directly liable for their own negligence. The Complaint alleges that the DPS Board and Denlinger had a duty to act reasonably to mitigate the harm allegedly caused by Mitchell. The Complaint further alleges that the DPS Board and Denlinger's failure to remedy the effects of the incident constitute a breach of that duty. Finally, the Complaint alleges that the breach of the DPS Board's alleged duty "aggravated the harm done to Plaintiffs." (Compl. ¶ 10.) Specifically, Plaintiffs argue that "once the defendant learns of an injury to the plaintiff, putting him or her in a special relationship with the plaintiff, the defendant is responsible for exercising ordinary care to prevent further aggravation of the plaintiff's injury" (Pls.' Opp'n Defs.' Mot. Dismiss at 16) [Document #22 at 17]. However, the Complaint fails to allege that Denlinger or DPS Board ever learned of Mitchell's conduct or W.E.T.'s alleged injuries.

32

Although the Complaint alleges that a letter regarding the incident in question was sent to Betsy Knott, the principal of Hope Valley School, and that Plaintiffs never received a response to the letter, the Complaint in this instance failed to allege that the DPS Board or Denlinger had any knowledge of said letter or the allegations with respect to Mitchell's actions. As such, the Court cannot conclude that there was any special relationship between the Defendants and W.E.T. that would warrant a heightened duty of care owed to W.E.T. by the DPS Board or Denlinger. Without more, the Plaintiffs' bare assertions against the DPS Board and Denlinger do not support a direct cause of action for negligence. Accordingly, Plaintiff W.E.T.'s direct cause of action for negligence against the DPS Board and Denlinger in her official capacity is dismissed.

### v. Punitive Damages

For the reasons stated above, any punitive damages sought against Denlinger for actions taken in an official capacity are dismissed. Further, the DPS Board is considered to be a municipality and is therefore immune from punitive damages. N.C. Motorcoach Ass'n v. Guilford County Bd. of Educ., 315 F. Supp. 2d 784, 810 (M.D.N.C. 2004) (dismissing the plaintiff's request for punitive damages because the defendant was a governmental entity); Ripellino v. N.C. Sch. Bds. Ass'n, 158 N.C. App. 423, 427, 581 S.E.2d 88, 91-92 (2003) (holding that as a governmental entity, the school board was immune from punitive damages). Accordingly, the Plaintiffs' claims for punitive damages against the DPS Board are dismissed and the Court now turns to Plaintiff W.E.T.'s claim against Denlinger in her individual capacity.

33

b.  State Law Claims Against Denlinger in her Individual Capacity

Plaintiffs have also asserted a state law cause of action for negligence against Denlinger in her individual capacity.  The Court finds that Denlinger is shielded from personal liability for negligence under the doctrine of public official immunity.  Under the North Carolina doctrine of public official immunity, "a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." Farrell v. Transylvania County Bd. of Educ., 175 N.C. App. 689, 696, 625 S.E.2d 128, 133 (2006) (quoting Smith v. Hefner, 235 N.C. 1, 6, 68 S.E.2d 783, 787 (1952)).  "School officials such as superintendents and principals perform discretionary acts requiring personal deliberation, decision, and judgment." Farrell, 175 N.C. App. at 694, 625 S.E.2d at 133.  "An official may not be held liable unless it be alleged and proved that his act, or failure to act, was corrupt or malicious . . . or that he acted outside of and beyond his scope of duties." Id. Plaintiffs have failed to allege that Denlinger's failure to act reasonably to mitigate the harm or to remedy the effects of the incident was corrupt or malicious, or that Denlinger at any time acted outside of the scope of her duties as Superintendent.  Consequently, Denlinger is a public official who qualifies for public official immunity and may not be held liable in her individual capacity for negligence.  Accordingly, Denlinger's motion to dismiss the Plaintiffs' negligence claim against her in her individual capacity is granted.  Finding that Denlinger is shielded from personal liability for negligence under state law, the Court will also dismiss Plaintiffs' request for punitive damages against Denlinger in her individual capacity.

34

## III. CONCLUSION

For the reasons discussed above, the Court concludes that Defendant Mitchell's Motion to Dismiss [Document #16] is GRANTED IN PART AND DENIED IN PART, as follows. Mitchell's Motion to Dismiss is GRANTED with respect to all claims brought by W. Tabb and D. Tabb, individually. Those claims will therefore be dismissed with prejudice. However, Mitchell's Motion to Dismiss is DENIED with respect to: (1) Plaintiff W.E.T.'s § 1983 claim against Mitchell for violations of his Fourteenth Amendment rights; and (2) Plaintiff W.E.T's state law claims against Mitchell for false imprisonment, intentional infliction of emotional distress and request for punitive damages.

As to Defendants Denlinger and the DPS Board's Motion to Dismiss [Document # 9] the Court concludes that Defendants' Motion to Dismiss the claims against Denlinger in her official and individual capacities is GRANTED. Accordingly, all of Plaintiffs' claims against Denlinger are dismissed with prejudice.

In addition, as to the DPS Board, Defendants' Motion to Dismiss is GRANTED with respect to: (1) Plaintiff W.E.T.'s § 1983 claim against the DPS Board for failure to train or properly supervise; (2) Plaintiffs W. Tabb and D. Tabb's individual claims against the DPS Board; (3) Plaintiffs' direct claim of negligence against the DPS Board; and (4) Plaintiffs' request for punitive damages. Each of these claims are therefore being DISMISSED with prejudice. However, Defendants' Motion to Dismiss as to the DPS Board is DENIED with respect to Plaintiff W.E.T.'s state law claims of false imprisonment, intentional and negligent infliction of

35

emotional distress, assault, battery, and negligence on the basis of respondeat superior, because

Plaintiffs have alleged in the Complaint that the DPS Board waived its governmental immunity

pursuant to N.C. Gen. Stat. § 115C-42.

An Order consistent with this Memorandum Opinion will be filed contemporaneously

herewith.

This, the 14th day of September, 2007.

United States District Court Judge